We'll now move to the next case on this morning's calendar. That is Brock versus Zuckerberg. Thank you. Thank you so much. Okay, Mr. Brock, so you have five minutes, but you reserved two minutes for rebuttal. So that will give you three minutes now. Yes. Morning, my name is Mandela. Go ahead. Morning, my name is Mandela Brock. I'm a pro se lineage, appearing in pro pia persona. Excuse me, I'm nervous. That's okay, don't be nervous. Lawyers get nervous too, but just go ahead. All right, if this matter is not reversed, it will pose a national threat to the First Amendment rights of more than two-thirds of the United States population who are the users of Facebook. And it will also coerce these people into engaging in a user agreement that contains fraudulent elements in it. And as you may know, this case is about my being censored by Facebook. So I guess one of your claims is a First Amendment claim, and that typically requires a state actor. And so I guess the first issue would be why is Facebook a state actor that is subject to First Amendment restrictions? Well, there are three requirements of a state actor, that a person is a private entity, is coerced into doing something, or they are working jointly, and one is- Right, but so is Facebook being coerced by the government? No, neither is Facebook a private actor. Well, Facebook is not private. You're saying that Facebook serves government function, is that right? Okay, no, it does not serve. Facebook is not a private company, it's publicly traded. So you're saying if it's publicly traded, it should be treated as a governmental entity? Well, that's what Marsh v. Alabama says. It says that the more a private company opens itself up to the public, then the more it is constrained by the United States Constitution. And Facebook is not a private entity. It gave up its- Well, Facebook allows the public to buy shares in its company, but does it allow the public to decide its policies? Well, no, it does not. The shareholders do that. They come together, I guess, yearly, bi-yearly, I don't know how they do it, and on Facebook. But Facebook is governed by the United States Security and Exchange Commission. And they are, in turn, governed by the United States Constitution. Can I ask you another question? In your complaint, you said something about you're being subjected to censorship and stripped of your rights under the Constitution, the New York State Constitution, in addition to federal and state laws. What federal and state laws, in addition to the constitutional rights, give you the right against censorship? Excuse me? What are the federal and state laws in addition to the constitutional provisions? I'm not sure, sir. I didn't do all the research on that. I was just talking about the constitutional rights. So there's a RICO claim, right? Yes, and a RICO- But any other state laws or federal laws that you're referring to? No, sir. So constitutional claim and a RICO claim. Yes, sir. Okay, and as far as the RICO is concerned, it's the user agreement. They say that all, they force users to say that if they bring any claims against Facebook, that it would be, that they will agree to go to Northern California. Now, Facebook is incorporated in Delaware. And Delaware law states that any incorporated business there, they have to bring their claims there. Anybody, if I want to sue Facebook, then I have to take it to Delaware Court of Chancery. But there's case law in this circuit that says that litigation activity, motions of that sort, are not enough to constitute a viable RICO predicate. You aware of that? Motions by the attorney. Him, his litigation is not, that's what it said. But I disagree with that, because he knew that Facebook can only be sued in Delaware, well, he should have known. I'm not saying that he knew for sure, but as an officer of the court, he very well should have known that the law of Delaware clearly states that if you bring a claim against Facebook, then you have to do it in the course of chancery down in Delaware. So is that your argument for why you're not bound by the terms of service? So you don't disagree that when you signed up for Facebook, you agreed to the terms of service, which is a contract between you and Facebook, do you? Can you repeat that? Facebook has the terms of service that you just mentioned. I mean, when you signed up to join Facebook, did you agree to those terms of service? Yes, I did. But anything that's fronting on its own face, it inviolates the contract law. And so because of this jurisdictional thing between California and Delaware, you're saying that the terms of service isn't enforceable, is that- Yes. Your argument, okay. Yeah, and also, when Mr. Mark Pincus, he came forward and he should have known that they had to be sued in Delaware. And when he asked for it to be transferred to the Northern District of California, that was fraud, because he knew that it shouldn't be transferred there. All right, so you've gone over, but you still have two minutes for rebuttal. So we'll now hear from, sorry, I lost my sheet. Ms. Colella. Good morning, this is Abby Colella on behalf of defendants. This case is resolved by straightforward legal principles. Defendants are not subject to the constitutional claims, because they're not state actors. And that's so regardless of whether Facebook is a publicly traded company. And as you've noted, this court has made clear that litigation activity, like a motion to transfer, cannot be the basis for a RICO claim. If the court has any questions, I'd be happy to address them. I have a question just about, I mean, it sounds like Mr. Brock doesn't really have claims besides the constitutional claims. But the district court did this holding about section 230 to say that, well, if he has any other claims, they'd be barred by section 230C1. But this isn't a claim where Mr. Brock is seeking to hold Facebook liable for the content of somebody else's post, right? He's saying he has a right to post for himself, and Facebook kept him from doing that. Right, so that's not, that wouldn't treat Facebook as the publisher of his post. He's saying Facebook shouldn't interfere with his own ability to post for himself. I disagree, Your Honor. This court has held in Lead Click Media and in Force Be Facebook, it said that what section 230C1 protects is editorial decisions with respect to user content. In this case- Editorial decisions when the text of it says it shouldn't be treated as a publisher or speaker of the content, right? So editorial decisions when they're being treated as a publisher or speaker. So we have that case, Force versus Facebook, where the plaintiffs were seeking to hold Facebook liable for the content of a terrorism post and its consequences. And the court said that Facebook can't be liable for that post, or for the failure to remove the post, because that would treat them as a publisher, because it was there. But in this case, Mr. Brock is not seeking to hold Facebook liable for anything he said in his post, right? I think Mr. Brock is seeking to hold Facebook liable for the decision to remove the post. And the decision to remove the post is as much an editorial decision as the decision to publish it in the first place. Facebook is a state actor, and so it should be treated the way the government would be treated when it censors somebody. So if I'm actually just speaking in a public park, and the government comes and says you're not allowed to speak here. And I sue the government. Am I treating the government as the publisher of my speech? That's a very weird way to think about that kind of a claim, isn't it? Your Honor, I think that, I would agree that it's odd to think of a public park as being a publisher. But if you change that to- That's what he says. He says Facebook is the new public square. And Facebook shouldn't be allowed to prevent people from speaking in it. Well, Your Honor, I think- And he's saying because I have a right to speak, and Facebook interfered with that right, the court should tell it it's not allowed to do that. I think the right- It's very weird to think of that as saying that Facebook is going to be held liable as the publisher of the speech that he wants to make. It's the opposite. He's saying, I want to speak for myself, and Facebook is preventing me. I think the right analogy here is kind of a public access television channel, just like the Supreme Court addressed in Manhattan Community Access. That's a situation where it's a forum for the speech of others. And in that case, I think the decision not to allow somebody to speak on that forum is a publishing decision. But it's also not a publishing decision, right? So in that kind of a claim, when you say the public access television is a public forum, and speakers have the right to bring their own speech in that forum, and the owner of the station doesn't have the right to censor them on the basis of viewpoint and so on. We're not saying they're liable because they're acting, they're liable for what somebody else says. We're saying they're liable because they're exercising editorial discretion and they're not allowed to. That's the opposite of treating them as a publisher, isn't it? I disagree, Your Honor. I think that what courts have said in interpreting Section 230 is that these editorial decisions, treating somebody as a publisher does constitute both decisions to publish in the first place and decisions to withdraw content. So can I ask, this is I think a related, this line of questioning is focusing on the awkwardness of 230C1 when the content at issue here is not Facebook's. I'm a little bit puzzled why we're not actually just talking about 230C2, which seems to create and express protection against liability for decisions to censor content. Why isn't that your argument? I would agree, Your Honor, that Section 230C2 also applies. This court has addressed C1 more in the past and has certainly applied C1 to, has made holdings that say C1 applies to this situation, so that that was the primary argument here. But I would agree that C2 also applies. The case you cite was a case in which the so-called publisher actually was found to have contributed its own content and really wasn't simply acting as a sort of arbiter as to what would be on or not on the platform. I was puzzled by the link between that case, the Leapfrog case, and the facts here where the content, nobody's suing on the basis of the content of the published information, which is one of the three factors in addition to this acting as publisher factor. Excuse me, Your Honor, is your point that the claims would be the same regardless of what the content was? That Mr. Brock's claims about the removal of his content don't have to do with the content of the content? I don't think I'm saying anything different from the exchange that's been happening for a while. I think what Judge Robinson is saying is Mr. Brock isn't saying that Facebook should be liable for the content of any post. He's saying he has the right to post and speak for himself, and Facebook shouldn't interfere, right? I mean, you'd agree that his claim does not seek to hold Facebook liable for the content of his posts in the same way that in Force versus Facebook, the plaintiffs did seek to hold Facebook liable for the content of the posts. I would agree, Your Honor, that those were the facts of Force v. Facebook, but I would not agree that Section 230 is so limited. Do we need Section 230 if there's no state actor here? I was, well, Your Honor, I don't think that the state actor issue necessarily applies to the claims that would be covered by Section 230, but as you've already established- Mr. Brock just said he has a First Amendment claim and a RICO claim. Correct. So the First Amendment claim would fail because- Because Facebook is not a state actor. So why do we need 230 for a First Amendment claim? You do not. Okay, and then the other claim is a RICO claim. Correct. And the RICO claim, you're arguing, fails because litigation decisions, motions to transfer, are not sufficient to be predicates for a RICO claim, right? Correct, Your Honor. So we don't need 230 for that either. Correct. Is there anything else that we need 230 for? No, Your Honor, I think that when Judge Lyman mentioned the Section 230 analysis, it was because the complaint had briefly mentioned state law. I mean, one thing we haven't talked about is the motion to vacate here based on Judge Lyman's wife's ownership of shares of stock. I mean, that's not the appeal, that's the motion, but do you want to address that? Yes, Your Honor, I think we'd all agree that any conflict is regrettable, but this is a situation where a vacater is not required under the Supreme Court standard in Wilshireburg. This court is going to exercise de novo review of this entire decision. So all the parties and the public can be confident that a fair and impartial panel will fully deal with all the issues in this case. And in that case, what the Supreme Court calls the draconian remedy of vacater just isn't necessary. Right now, there is a motion pending before Judge Lyman to vacate his decision? No, Your Honor. Oh, there's been a determination on that, and he's decided not to? No, Your Honor, there never was a motion made in the district court. Oh, there's just a motion before us? Correct. I see, okay. All right, thank you. We'll now hear Mr. Brock for two minutes of rebuttal. I never said that Facebook was a state actor. I'm not even saying that they, the only thing is that I'm using the United States Supreme Court decision of Marsh v Alabama that says, once you open up your business to the public, then you are constrained by the United States Constitution. I'm not saying it's a state actor, I'm not saying that it works in part with the state. And as far as the motion to vacate is, that should be, that should be, how you say it? Upheld, granted, there we go. Because Judge Lyman, he had only been on the bench for a few months when he got this case. So there's my belief that it's highly unlikely that he did not know that his wife owned Facebook shares. And from the onset of this case, first he dismissed Mark Ompikas from the matter, and he didn't even write anything. He just said it was frivolous and malicious. He didn't give a reasoning, he just said that. And- I think the argument of Ms. Colella is that we don't need to vacate Judge Lyman's order, because we're reviewing that decision as though, we're looking at it fresh. What's called de novo review. So we're not- You're looking at it like what, I'm sorry? De novo review, which means we're not giving it any preference. We're not giving that decision any deference. We're looking at it fresh, and we'll be deciding this based on whether the claims pled support causes of action going forward. And so that's the argument as to why, even if there was an improper ownership of shares, it doesn't matter because we're looking at this fresh. That's Ms. Colella's argument. Do you have a response to that? About the motion to vacate? No. Why would it be fair to you not to vacate the decision of Judge Lyman if we're just going to make a separate decision? I understand that. If you're just going to make an overall decision, it don't make sense to treat those separately. I understand. That's the only thing I wanted to say. I'm not saying that Facebook is a state act. I'm saying that being that they completely open up their business to the public, and they are governed by the United States SEC. And being that SEC is under the umbrella of the United States Constitution. Then the nexus of, they right there. Everything is up there together. Am I saying that correct? Yeah, I think we understand. I think we understand your point, yeah. All right, yeah, that's my point. And that's it. Okay. All right, thank you, Mr. Brock and Ms. Colella. We'll reserve decision, but thank you all.